# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edward A. Bobrick | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2226 | **DATE** | 8/9/2000 |
| **CASE TITLE** | Craig Anderson vs. Village of Oswego | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 8/29/00 at 10:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Order. Defendant's motion to dismiss plaintiff's complaint is denied.

*/s/ Edward A. Bobrick*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 10 2000 | |
| | Notified counsel by telephone. | | date docketed | 12 |
| | Docketing to mail notices. | ED-7 | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 AUG -9 PM 3: 55 | 8/9/2000 date mailed notice | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | TH mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIG ANDERSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 00 C 2226 |
| VILLAGE OF OSWEGO, an Illinois municipal corporation, | ) ) ) ) |
| Defendant. | ) |

DOCKETED
AUG 10 2000

## MEMORANDUM ORDER

Before the court is the motion of defendant Village of Oswego to dismiss the complaint of plaintiff Craig Anderson.

## I. BACKGROUND

Plaintiff worked for the defendant as a building and zoning administrator from 1991 to 1999. He testified pursuant to a subpoena on July 16, 1998, in a civil case brought against defendant as a result of a contract dispute. The defendant lost the case and was found liable for $1.3 million. Defendant suspended plaintiff in February of 1999 and, on March 8, 1999, terminated him. Plaintiff claims he was terminated in retaliation for his testimony in response to the subpoena. He brings a two-count complaint, alleging retaliatory discharge under the common law of Illinois, and denial of equal protection under 42 U.S.C. § 1983. Defendants now move to dismiss plaintiff's complaint.

## A. Plaintiff's Allegations

In considering a motion to dismiss, we accept as true all well-pleaded factual allegations and draw all possible inferences in favor of the plaintiff. *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). As already noted, the defendant in this case was named defendant in a lawsuit. The suit alleged that defendant had refused to honor certain contractual obligations regarding payment of construction costs of water and sewer improvements. Plaintiff was subpoenaed as a witness and, on July 16, 1998, testified at trial. At trial's end, judgement was enter against the defendant in the amount of approximately $1.3 million. (*Complaint*, ¶¶5-7).

According to plaintiff, shortly after he testified, defendant accused him of wrongfully providing confidential information–an accusation which plaintiff denies. Defendant suspended plaintiff on February 9, 1999, stating that he had wrongly issued a variance and for other unstated performance issues. Finally, on March 8, 1999, plaintiff was terminated. (*Complaint*, ¶¶9-13).

Under Count I of his complaint, plaintiff alleges that defendant violated clearly mandated public policy by firing plaintiff for testifying truthfully against it. This, plaintiff claims, constitutes retaliatory discharge under the common law of Illinois. (*Complaint*, ¶¶ 15-17). In addition, under Count II, plaintiff claims defendant's actions violated the equal protection clause of the Fourteenth Amendment, wrongfully treating him disparately as a "class of one." (*Complaint,* ¶¶ 20-24).

## B. Defendant's Arguments

Defendant argues that plaintiff has not adequately alleged a claim for retaliatory discharge, because he has not alleged that he was terminated in violation of a clearly mandated public policy. Defendant also contends that plaintiff's equal protection claim must fail because he has not alleged that he was terminated based on a policy or custom of disparate treatment.

## II. ANALYSIS

A complaint will not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). We must read the complaint liberally and accept as true the well-pleaded allegations and the inferences that may reasonably be drawn from those allegations. *Saperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims." *Id.*

## A. Retaliatory Discharge Claim

Plaintiff brings Count I under the Illinois common law, alleging retaliatory discharge. Defendant moves to dismiss. Now it gets complicated. First, the boilerplate. An employee can state a claim for retaliatory discharge only if he can demonstrate that he was terminated for his actions, and that the termination violated a clear mandate of public policy. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 421 N.E.2d 876 (1981).

3

The public policy must be found in the state's constitution, statutes or, where they are silent, in the judicial decision of the state's courts. *Id.* Here, plaintiff alleges he was fired for truthfully testifying against his employer, the defendant, in response to a subpoena. The issue defendant raises in its motion to dismiss is whether firing an employee for complying with a subpoena to testify against his employer amounts to a contravention of public policy. The complicated part is that the law on what public policies will support a claim is one of the murkier areas of law around.

The tort of retaliatory discharge was essentially created by the Illinois Supreme Court in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 384 N.E.2d 353 (1978), where an employee was fired for filing a worker's compensation claim. In so doing, the court stated that it was "convinced that to uphold and implement this public policy [favoring the exercise of worker's compensation rights,] a cause of action should exist for retaliatory discharge." 74 Ill.2d at 181, 384 N.E.2d at 357. Three years later, the Illinois Supreme Court revisited the recently created tort in *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 421 N.E.2d 876 (1981). There, the court considered a case where an employee was discharged for reporting unspecified, possible criminal conduct of a fellow employee to local law enforcement, and agreeing to aid in further investigation. Necessarily, the court considered the "public policy" aspect of its prior decision:

> By recognizing the tort of retaliatory discharge, *Kelsay* acknowledged the common law principle that parties to a contract may not incorporate in it rights and obligations which are clearly injurious to the public. (*See People*

4

> *ex rel. Peabody v. Chicago Gas Trust Co.* (1889), 130 Ill. 268, 294, 22 N.E. 798.) This principle is expressed forcefully in cases which insist that an employer is in contempt for discharging an employee who exercises the civic right and duty of serving on a jury. (*People v. Vitucci* (1964), 49 Ill.App.2d 171, 172, 199 N.E.2d 78; *People v. Huggins* (1930), 258 Ill.App. 238, 243; *see also* Ill.Rev.Stat.1979, ch. 38, par 155-3 (making it a contempt of court to fire or discipline an employee for attending court when subpoenaed as a witness). But the Achilles heel of the principle lies in the definition of public policy. When a discharge contravenes public policy in any way the employer has committed a legal wrong. However, the employer retains the right to fire workers at will in cases "where no clear mandate of public policy is involved" (*Leach v. Lauhoff Grain Co.*, (1977), 51 Ill.App.3d 1022, 1026, 9 Ill.Dec. 634, 366 N.E.2d 1145). But what constitutes clearly mandated public policy?
>
> There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. (*Smith v. Board of Education* (1950), 405 Ill. 143, 147, 89 N.E.2d 893.) Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.

85 Ill.2d at 130, 421 N.E.2d at 879. Obviously, this holding transformed the question of "what constitutes public policy" into "what constitutes a citizen's social rights, duties and responsibilities."

Twenty years after *Kelsay*, the court noted that there was still no answer to the issues left open in *Kelsay* and *Palmateer*, but determined that:

> a review of Illinois case law reveals that retaliatory discharge actions are allowed in two settings. The first situation is where an employee is discharged for filing, or in anticipation of the filing of, a claim under the

5

> Worker's Compensation Act. (820 ILCS 305/1 *et seq.* (West 1992)). *See Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526, 116 Ill.Dec. 694, 519 N.E.2d 909 (1988); *Kelsay*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353. The second situation is when an employee is discharged in retaliation for reporting of illegal or improper conduct, otherwise known as "whistle blowing." *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981).

*Jacobson v. Knepper & Moga, P.C.*, 185 Ill.2d 372, 377, 706 N.E.2d 491, 493 (1998). What is unclear is whether this effected a limitation of the tort to these two categories. The "worker's compensation" category is clear and easy to apply. The "whistleblower" category is nebulous and has been suspect from the beginning. As already noted, the criminal conduct reported in the seminal "whistleblower" case, *Palmateer*, is unspecified: the plaintiff in *Palmateer* reported that a fellow "employee *might* be involved in a violation of the Criminal Code of 1961" 85 Ill.2d at 127, 421 N.E.2d at 877. The dissent in *Palmateer* pointed out that the complaint in that case did "not even allege that a crime had been committed. It only allege[d] that plaintiff . . .reported . . . that an employee of the defendant might be involved in a violation of the criminal code and that he agreed to assist . . . in gathering further information." 85 Ill.2d at 142, 421 N.E.2d at 884 (Ryan, J., dissenting). That does not exactly constitute whistleblowing.

In addition, it is unclear how serious does the crime or improper conduct have to be before public policy is implicated. Reports of activity that impinges on public health or safety are easily, and readily accepted as furthering public policy, whether or not the activity is criminal. *Stebbings v. University of Chicago*, 312 Ill.App.3d 360, 372-73, 726

N.E.2d 1136, 1145 (1st Dist. 2000) (collected cases). On the other hand, Illinois courts have stated that social and economic regulation are unlikely to support a retaliatory discharge claim. *Leweling v. Schnadig Corp.*, 276 Ill.App.3d 890, 894, 657 N.E.2d 1107, 1110 (1st Dist. 1995) (collected cases). Then again, seemingly purely economic concerns like securities and taxes will support claims. *Stebbings*, 312 Ill.App.3d at 373, 726 N.E.2d at 1146 (collected cases). In short, there is really no telling what will be found to constitute a public policy sufficient to support a retaliatory discharge claim.

Returning to the instant case, we note that defendant's initial argument for dismissal is based on the fact that plaintiff testified in a civil case; it submits that access to the courts for non-criminal matters does not involve a clearly mandated public policy. As plaintiff points out, however, it is mandatory to respond to a lawful subpoena, ILCS S.Ct.R. 237(a), and it is a Class 3 felony to make a false statement under oath. 720 ILCS 5/32-2. Plaintiff's complaint also implicates the crimes of deterring a witness from testifying and harassing a witness. 720 ILCS 5/32-4; 5/32-4a. Defendant's only reply to this is that these crimes were hypothetical because none were prosecuted. Defendant's position is that "[s]imply because the criminal code *could have been* implicated does not make Plaintiff's testimony regarding a contract dispute" sufficient to support a retaliatory discharge claim. (*Defendant's Reply Memorandum*, at 3). Yet, all that was before the court in *Palmateer* was a situation where the criminal code *could have been* implicated. At this stage of the proceedings, we think public policy is sufficiently implicated where the plaintiff alleges

7

he was fired for obeying a subpoena and testifying against his employer in a contract dispute. Illinois Supreme Court Rules and criminal statutes support this position, and *dicta* in retaliatory discharge cases clearly states that "attending court when subpoenaed" is a matter of public policy justifying a retaliatory discharge claim. *Shearson Lehman Bros., Inc. v. Hedrich*, 266 Ill.App.3d 24, 639 N.E.2d 228, 203 (1st Dist. 1994). Plaintiff's complaint suggests that defendant had attempted to avoid a million dollar contract obligation. It is true, as defendant persists, that it was a civil matter. But as the court in *Stebbings* pointed out, the tort of retaliatory discharge will protect the reporting of any violation of the Criminal Code, be it as minor as the theft of a $2 screwdriver. 312 Ill.App.3d at 372, 726 N.E.2d at 1145. That would seem to be a far less concern than a million-dollar debt.

## B. Equal Protection Claim

Plaintiff brings Count II of his complaint under 42 U.S.C. § 1983, alleging that defendant denied him equal protection under the law. Defendant argues that plaintiff's claim cannot stand because he failed to allege he was terminated pursuant to a municipal custom or policy. Under *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978), a municipality cannot be held liable for § 1983 claims under a *respondeat superior* theory of liability. 436 U.S. at 691, 98 S.Ct. at 2018. Instead, a claim must be based on a policy or custom, which can take three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'

*Garrison v. Burke*, 165 F.3d 565, 571-72 (7th Cir. 1999). Here, defendants argue that because plaintiff states he was a "class of one," his own allegations undermine his claim. That is, "the fact that the alleged disparate treatment occurred only once clearly negates any inference of a Village policy or custom." *(Defendant's Memorandum of Law*, at 7 (citing *Grow v. City of Milwaukee*, 84 F.Supp.2d 990 (E.D. Wis. 2000); *Love v. Cook County*, 82 F.Supp.2d 911 (N.D.Ill. 2000); *Sarantakis v. Village of Winthrop Harbor*, 969 F.Supp. 1095 (N.D.Ill. 1997).

Recalling that we must read plaintiff's complaint liberally, we note that he alleges that his termination was the result of the decision of the village's administrator, Bruce Bonebrake. This allegation allows the inference that plaintiff's alleged deprivation was caused by a person with policymaking authority. Furthermore, defendant's argument ignores Seventh Circuit precedent–recently affirmed by the Supreme Court–allowing for "class of one" equal protection claims. *Olech v. Village of Willowbrook*, 160 F.3d 386 (7th Cir. 1998) *aff'd* - U.S.-, 120 S.Ct. 1073 (2000). These are "vindictive action" cases where the plaintiff must show that the "defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the

defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). The plaintiff here makes just such an allegation, claiming he was terminated for no other reason then his compliance with a subpoena and giving evidence that damaged the defendant's case in a lawsuit. At the allegation stage, this certainly passes for action that was vindictive and personal.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint is DENIED.

ENTERED: *Edward A. Bobrick*
**EDWARD A. BOBRICK**
**United States Magistrate Judge**

DATE: August 9, 2000